AFFIDAVIT


I, Derek Davis, being duly sworn on oath, depose,
and state as follows:

1.    Your Affiant is a Special Agent with Homeland
Security Investigations (HSI) assigned to the office of
the Resident Agent in Charge, Minot, North Dakota.
Your Affiant has been employed by HSI since January of
2006. Your Affiant has a Bachelor of Science degree in
Criminal Justice from the University of North Dakota
Grand Forks, North Dakota, and has successfully
completed the Criminal Investigator Training Program
and HSI Special Agent Training and the U.S. Customs
Inspector Training all located at the Federal Law
Enforcement Training Center in Glynco, Georgia.  Prior
to his employment with HSI, your Affiant was a U.S.
Customs Inspector within the U.S. Customs Service,
Department of Treasury for three plus years.  Your
affiant previously worked as a Special Agent assigned
to a DEA Task Force in Minneapolis, Minnesota.  As a
Special Agent, your Affiant is responsible for
enforcing federal criminal statutes and has received
training and actual experience relating to Federal
Criminal Procedures, Federal Statutes, and HSI
Regulations.  The information contained within the
affidavit is based on your Affiant's training and
experience, and information obtained from other law
enforcement agents involved with this investigation,
including agents with the MHA Nation Division of Drug
Enforcement (MHADDE).

2. As a Special Agent, your Affiant is responsible
for enforcing federal criminal statutes to include the
importation, sale, distribution and possession of

controlled substances, Pursuant to Title 21, United
States Code (USC). Additionally, your affiant is
responsible for enforcing federal criminal statutes to
include the operation of unlicensed money service
businesses, and money laundering; Pursuant to Title 18,
United States Code (USC).  Your Affiant has received
training and actual experience relating to Federal
Criminal Procedures, Federal Statutes, and HSI
Regulations. Additionally, your Affiant has received
training and instruction in international and
interstate narcotics investigations, along with
international and interstate financial investigations.

3. As a Special Agent with HSI, I have authority to
investigate violations of federal law.  I also have
authority to seek and execute federal process, to
include criminal complaints and search warrants.  I
make this affidavit in support of an application for a
search warrant under Federal Rules of Criminal
Procedure to search the following property:  the
single-family dwelling of Kayla Keyes and James Windy
Boy, located at 314 E. Central Avenue, New Town, North
Dakota,("the SUBJECT RESIDENCE"), as further depicted
in Exhibit A, for the items identified in the attached
Exhibit B.

4. Based on the facts set forth in this affidavit,
I believe that the SUBJECT RESIDENCE; as well as
property contained therein, are all presently being
used in furtherance of violations of Title 21, United
States Code, Sections 841(a)(1) and 846 (distribution
of controlled substances, and conspiracy) and that
there is probable cause to believe that the execution
of said search warrant will lead to evidence, fruits,
and instrumentalities of the aforementioned crimes as

well as to the identification of individuals who are engaged in the commission of those and related crimes.

5. The information presented herein is derived from my experience, training, interviews, collected intelligence, and from information received from other law enforcement agencies, including local, state, tribal, and federal law enforcement officers involved in the referenced investigation of controlled substance violations.  As this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included every fact known to your affiant or those authorities concerning this investigation. Where statements of others are set forth in this affidavit, they are set forth in substance and are not verbatim References made to confidential sources of information are referred to as "CS" throughout this affidavit. These are persons who are identifiable and whom have spoken with federal and/or tribal agents over the course of this and other investigations.

## FACTS

6. Agents involved in this investigation have gathered substantial information pertaining to the historical use, acquisition and distribution of oxycodone pills by Kayla Keyes, James Windy Boy, and Samuel Windy Boy.  Some of this information was utilized by agents in securing a Federal search warrant for property near New Town, North Dakota, previously occupied by these individuals.  That search warrant was executed on or about April 6, 2017. The historical information included the following:

    a. On November 19, 2015, SA Dawn White, MHA-DDE, interviewed Jamie Morsette ("Morsette") again.  Morsette advised that an African American

male pill source, known by her to utilize the
nickname "Diz", stayed at James Windy Boy ("Windy
Boy") and Kayla Keyes' ("Keyes") residence.
"Diz" was from Detroit, Michigan, but spent time
in both Minot, North Dakota and New Town, North
Dakota.

    b. On March 15, 2016, MHA-DDE agents
interviewed Rayan Wolf ("Rayan") regarding Windy
Boy, Keyes, and others.  The following, in part,
was noted:

    i. Rayan has ingested prescription pills
    ("pills") for purpose of intoxication with
    Keyes and Windy Boy.

    ii. Rayan advised in February of 2016, Keyes'
    associate, an unidentified black male was
    receiving a shipment of pills at the Amtrak
    station in Minot, North Dakota.  Keyes' told
    Rayan that she was receiving an undetermined
    quantity of thirty (30) milligram Percocet
    pills and would sell to Rayan after delivery,
    the next day.  Keyes did not return for the
    sale.

    iii. Rayan has purchased various quantities
    pills from Keyes during each transaction.
    Rayan estimated that she has purchased pills
    from Keyes on approximately one hundred
    different occasions.

    c. On April 3, 2016, Officer Nate Miller,
Three Affiliated Tribes Police Department
("TATPD"), responded to a reported disturbance at
James Brugh ("Brugh")/Windy Boy family property,
located on BIA 2, west of New Town, North Dakota.

During Officer Miller's investigation, he spoke
to Brugh.  Brugh advised members of his family,
to include Windy Boy and Samuel Windy Boy ("Sam")
were "smoking" pills on the property.

d On April 4, 2016, CS-1 was interviewed by
MHA-DDE agents.  CS-1 advised that he/she began
to notice heavy vehicle traffic at the Windy Boy
property, located at 3689 97th Avenue NW, New
Town, North Dakota.  CS-1 personally witnessed
multiple hand-to-hand transactions between
various individuals and both Sam Windy Boy
("Sam") and James Windy Boy ("Windy Boy").  As
such, CS-1 later confronted Windy Boy.  CS-1
later learned that Sam and Windy Boy had some
type of relationship with two (2) unidentified
African American males and pills.  CS-1 has seen
Sam in possession of approximately fifty (50)
pills.  CS-1 has also seen Sam ingest the fumes
from burning pills.  CS-1 also witnessed Sam
provide Windy Boy with an undetermined amount of
United States currency.  CS-1 has heard that both
Sam and Windy Boy have contacted various
individuals who were found to possess pills and
arrested to not disclose their (Sam and Windy
Boy's) names to law enforcement.

e. On September 23, 2016, SA Dawn White,
MHA-DDE, met with Charday Foote ("Foote").  Foote
advised Keyes and Windy Boy's pill source of
supply was an African American male who utilized
the nickname "Ace".

f. On October 14, 2016, this Court
authorized a federal search warrant to search
multiple apartments at Dakota Acres Apartment
Complex, located at 815 College Drive, New Town,

North Dakota, which is within the exterior boundaries of FBIR.  MHA-DDE agents and other officers found and seized a variety of items, pursuant to the search warrant, to include 407 pills, one handgun, $26,668.00 in United States currency, and 23 electronic devices and cell phones. During the execution of the federal search warrant, a number of individuals, both enrolled members of Three Affiliated Tribes and individuals from the Detroit, Michigan area were interviewed, to include Rainy Hall (Hall).  Hall admitted she purchased pills, three times a week, over the past three years, from Windy Boy.

g. On October 18, 2016, Casey Bolman ("Bolman") was interviewed by SA Neil Marley, MHA-DDE, and SA Derrick Bourque, BIA-DDE.  Bolman advised he purchased a pill from Windy Boy at Windy Boy's residence, then located at 413 9th Street in New Town, North Dakota.

h. On October 18, 2016, Foote advised SA White, MHA-DDE, that Windy Boy contacted her and asked her if she wanted to purchase pills from him.  Foote also mentioned "Ace" was at Windy Boy's house in New Town, North Dakota but would be leaving soon and traveling to Minot, North Dakota.

i. On October 18, 2016, Chuck Franchuck ("Franchuck") was interviewed by SA White, MHA-DDE.  Franchuck advised that he had purchased pills from Windy Boy since 2012.

j. On November 2, 2016, MHA-DDE agents interviewed Franky Fernandez ("Fernandez").  He advised that he met an African American male at

Windy Boy and Keyes' residence that utilized the nickname of "Ace". Fernandez stated that "Ace" asked Fernandez to sell pills and Fernandez was provided pills from "Ace" at the Windy Boy residence. Fernandez knew "Ace" would only stay for a few hours at the Windy Boy and Keyes' residence and would depart for Minot after the pills were distributed in/about New Town, North Dakota.

k. On November 14, 2016, Richard Hosie ("Hosie") was interviewed by agents with Homeland Security Investigations ("HSI") and MHA-DDE. Hosie identified Windy Boy as a source of supply for pills in New Town, North Dakota. He added that Windy Boy's "plug" (a term commonly used to a describe a "source" of controlled substances) typically stayed at Little Missouri Inn in New Town.

l. On November 17, 2016, Lydell Baker ("Lydell") was interviewed in Minot, North Dakota. He identified Windy Boy as source of supply for pills in New Town, North Dakota. He stated he purchased pills over ten times from Windy Boy at $60 a pill over the course of two weeks in late November 2015.

m. On January 9, 2017, Rayan advised SA White, MHA-DDE, that she had a conversation with Keyes. Keyes told her that she was selling pills for Yolanda Lockwood the week prior. She became upset when Rose Bear stopped at her residence, in an effort to acquire pills, without calling first.

n. On January 17, 2017, MHA-DDE agents interviewed Melissa Veach ("Veach"). Agents asked Veach who she would purchase pills from when she was not able to purchase pills from Kendra Luther ("Luther") or Curt Wells ("Curt"). Veach stated that she would purchase pills from Windy Boy and Keyes. SA White asked Veach where Windy Boy and Keyes' source for pills was staying. Veach stated that Windy Boy had stated to her that their source for pills was staying at a hotel nearby since Windy Boy could not stand having his source of supply live with him at his house. Veach also stated that she was not aware of what ethnicity their source was but that Hosie's source for pills knew Windy Boy and Keyes' "plug" (source for controlled substances). Lastly, Veach advised that Windy Boy and Keyes had moved from their residence on 9th Street in New Town, North Dakota to the Windy Boy family property, known by agents to be located at 3689 97th Avenue NW, New Town, North Dakota.

o. On January 25, 2017, Rayan was again interviewed by SA White, MHA-DDE. Rayan identified Darius Sledge, aka "Ace", as an African American male pill supplier and she confirmed he had been on FBIR since June of 2016. Rayan added that Sledge had been involved in the possession and distribution of pills. Rayan advised Sledge and other African American males have stayed at Christian Wolf's residence on 6th Street in New Town.

p. On January 25, 2017, based on information above, MHA-DDE agents observed a black Dodge Charger, bearing Michigan license plate number

DNR 2099, parked at Christian Wolf's residence in New Town, North Dakota. Based on the historical information described above, agents initiated surveillance of the Charger and Wolf's residence. While conducting surveillance, agents noted an older silver or champagne-colored Chevrolet Tahoe arrive at the residence and then quickly depart the area. Shortly after, the Charger was seen leaving the residence and ultimately traveled east on Highway 23 toward Parshall, North Dakota. SA Tyler Fauver, MHA-DDE, noted that the Charger was occupied by two black males, to include Darius Sledge. As MHA-DDE agents continued surveillance of the Wolf residence, they noted vehicular traffic coming to and leaving from that residence within minutes of each other. Several of the vehicles were recognized by the agents as those belonging to individuals who were suspected of engaging in prescription pill usage and/or distribution. MHA-DDE agents followed the Charger to the Van Hook Territorial Inn. After a period of time, Sledge emerged from the motel, walked over to the Van Hook Travel Center, entered and exited the store quickly, and then got into the back seat of a dark-colored Chevrolet Tahoe. Agents determined that the Tahoe was occupied by two adults and three children. Approximately two minutes later, Sledge emerged from the vehicle and walked back to the motel. The Tahoe then immediately left the Travel Center. A short time later, MHA-DDE K-9 Patrol Agent (PA) David Brummett clocked the Tahoe for speeding and stopped it in New Town. The occupants were identified. PA Brummett deployed his canine and it alerted to the

presence of an odor of controlled substances in
or about the vehicle.   Agents searched the
vehicle and seized nine (9) thirty (30) milligram
Oxycodone pills.   Both of the adult occupants
were interviewed and ultimately acknowledged that
Sledge provided them pills and has been since
June of 2016.

q. On February 9, 2017, Newly Little Swallow
("Little Swallow") was stopped in New Town for a
traffic infraction by Patrol Agent ("PA") David
Brummett, MHA-DDE.   During his investigation, PA
Brummett deployed his K9, "F'Bope".   "F'Bope"
alerted to the presence of odors of controlled
substances in/about the vehicle.   As a result, PA
Brummett detained Little Swallow and searched
his/her vehicle.   PA Brummett found and seized a
spoon with the remnants of a thirty (30)
milligram Oxycodone on it, along with other items
of drug paraphernalia, to include a hypodermic
syringe.   Little Swallow was then interviewed by
SA Coulter and PA Brummett, MHA-DDE.   Little
Swallow advised that between November 2016 and
February 2017, he/she purchased thirty (30)
milligram Oxycodone pills from both Windy Boy and
Keyes.   Windy Boy and Keyes lived in a house on
9th Street in New Town.   Little Swallow purchased
pills from them at their residence.   Little
Swallow also met Windy Boy on one occasion at
4Bears Casino and purchased pill(s) from him
there.   In addition, approximately one week or so
prior to this interview, Little Swallow and Keyes
discussed Little Swallow purchasing an additional
quantity of pills from her.   She told Little
Swallow that she purchased/acquired pills from an
unidentified African American male who was

staying at the Territorial Inn motel, located just east of New Town.  Little Swallow agreed to meet Keyes, pick her up, give her $140 for two (2) pills, transport her to Territorial Inn, and then allow her to take Little Swallow's money to the unidentified African American male and purchase pills for Little Swallow.  Little Swallow also stated that from the middle of November 2016 through January 2017, he provided money to Robby Knight to purchase either one (1) or two (2) Oxycodone pills for him.  Knight told Little Swallow that he acquired/purchased pills, that he later supplied to Little Swallow, from Wolf.

r. On February 22, 2017, a cell phone was delivered to MHA-DDE by a Three Affiliated Tribes ("TAT") corrections officer.  Said officer advised the phone was found in a vehicle and its owner was unknown.  Said officer then began to look through the phone in an effort to determine its owner.  Said officer noted various text messages indicative of drug activity on it.  As a result, agents went through the phone to further determine its owner and concluded that there were a number of text messages to and from both Windy Boy and Keyes regarding the distribution of pills.

s. On March 10, 2017, Rose Bear ("Bear") was interviewed at the United States Attorney's Office ("USAO") in Bismarck, North Dakota. During the interview, Bear advised she purchased between two (2) and five (5) pills from Windy Boy and Keyes on various occasions.

t. On March 14, 2017, CS-2 was utilized and directed to contact Christian Wolf regarding the potential purchase of pills.  CS-2 called Wolf. Wolf advised CS-2 that he had someone in town that could supply CS-2 pills.  CS-2 arranged to purchase $390 worth of pills from the unnamed individual, through the assistance of Wolf. Agents followed CS-2 to the Wolf residence in New Town, North Dakota.  They noted, just prior to CS-2's arrival, that a grey Dodge Charger, believed to be the vehicle owned and occasionally operated by Windy Boy's mother, Blanca Windy Boy ("Blanca"), arrived at the Wolf residence.  Windy Boy and a small child were seen in the vehicle. Soon after, after CS-2 arrived and made contact with Wolf, CS-2 purchased four (4) thirty (30) milligram Oxycodone pills from Windy Boy for $320.  CS-2 personally handed the buy money to Wolf in the presence of Windy Boy.  Windy Boy then briefly turned away, turned back toward CS-2, and handed CS-2 four (4) pills and $70 in change.  CS-2 later positively identified the individual who distributed pills to him/her on that occasion as Windy Boy.

u. On March 16, 2017, CS-2 was again interviewed by MHA-DDE agents.  CS-2 advised Sam Windy Boy had an unidentified African American male pill supplier at his house, located on BIA 2, west of New Town, North Dakota.  CS-2 also advised that on March 15, 2017, Dave White Tail ("White Tail") encountered CS-2 in New Town. White Tail asked CS-2 if he/she was looking to purchase/acquire any pills.  White Tail told CS-2 that Sam had a black male supplier out at his home.  CS-2 added that Louie Lockwood told CS-2

that Rayan was distributing pills for the African
American male pill supplier who was staying at
the Windy Boy property.  Lockwood added that Sam
had recently become upset with Rayan because
Rayan went "around" him and straight to the
African male pill supplier, instead of going
through Windy Boy to acquire pills for
distribution.  CS-2 also believed Windy Boy was
distributing pills for the African American male
pill source who was staying at the Windy Boy
property.  CS-2 suspected this because it had
recently become public knowledge that Windy Boy
and his girlfriend, Keyes, had then relocated to
the Windy Boy property from their residence in
New Town, North Dakota.

v. On March 20, 2017, CS-3 advised that
Serena Thomas ("Thomas") stated to CS-3 there was
an African American male staying out at the Windy
Boy residence on BIA 2, located at 3689 97th
Avenue NW, New Town, North Dakota, for the
purpose of distributing pills.  CS-3 had picked
up Thomas from the Windy Boy residence
approximately two weeks prior to this interview,
after Thomas had purchased pills from Windy Boy.
CS-3 also stated that Windy Boy and Keyes had two
(2) different African American males that they
dealt with for the purpose of distributing pills
and that they sell approximately 100 pills per
day.  CS-3 also advised that Rayan also
distributed pills for the same African American
male that Windy Boy and Keyes use and that there
may also be an African American male at Rayan's
residence, known by agents then to be located at
815 College Drive, Apartment 3D, New Town, North
Dakota because Rayan often would go into her

residence to acquire additional quantities of pills.

x. On March 23, 2017, SA Fauver and PA Miller, MHA-DDE, conducted an interview with Daniel Wells ("Wells"). During the course of this interview, Wells stated that from December 2015 to August 2016, he purchased pills from Windy Boy and Keyes. Wells stated that he had purchased pills from Windy Boy and Keyes during this time period "hundreds" of times and stated five hundred (500) times would be an approximate guess. Wells stated he consumed five (5) to eight (8) pills a day during this time period.

y. On March 23, 2017, MHA-DDE and BIA-DDE agents conducted surveillance of the Windy Boy property, located on the south side of BIA 2/97th Avenue NW, between mile markers 2 and 3. It has a physical address of 3689 97th Avenue NW, New Town, North Dakota. The property can be accessed by a gravel/dirt road that runs south from BIA 2/97th Avenue NW and is controlled by a gate off of the roadway. Agents know that there are three (3) houses on the property. The house furthest from BIA 2/97th Avenue NW was occupied by James Brugh. The tan manufactured home, which faces to the east, which is located just to the north and west of the Brugh residence, was then occupied by Blanca; her son, Windy Boy; and his girlfriend, Keyes. The light blue manufactured home, which faces to the south, which is located just to the north and east of the tan Windy Boy residence, was then occupied by Sam and a Caucasian male, identified by MHA-DDE on March 23, 2017 during a traffic stop, after his vehicle left the Windy

Boy property, as Kristopher Trone, who is from
Minot, North Dakota.  Agents observed a teal
Pontiac Grand Am, known by them to have been
driven in the past by Keyes, depart the tan Windy
Boy residence and travel to 4Bears Casino.
Agents followed the vehicle.  The vehicle came to
rest in the parking lot in front of the 4Bears
Event Center.  Minutes later, SA Fauver, MHA-DDE,
positively identified Keyes as the lone occupant
of the vehicle.  Soon after, Keyes was observed
getting into another vehicle, determined to be
occupied by Garrett Vigan ("Vigan"), a known
abuser of prescription pills.  After a few
minutes, Keyes and Vigan got out of Vigan's
vehicle.  Keyes got back into her Pontiac,
departed the parking lot, and drove directly back
to the tan Windy Boy residence.  Agents followed
her from the 4Bears Event Center back to the
Windy Boy property.  Almost immediately after
Keyes arrived at the tan Windy Boy house, agents
noticed an indescribable individual, who was
carrying a flashlight, as it was dark, walk from
the vicinity of the Pontiac/tan Windy Boy house
to the Sam's light blue house.  As the individual
carrying the flashlight approached the light blue
home, the exterior lights on the light blue house
were turned off and then back on.  Agents also
noted that throughout their surveillance of the
Brugh/Windy Boy property, they heard what
appeared to be gunfire at various instances.

z. On March 24, 2017, MHA-DDE agents again
met with CS-4.  CS-4 stated that Christian Wolf
was "hard up" to sell a firearm.  CS-4 added that
on March 23, 2017, Wolf had contacted CS-4 and
inquired as to whether or not CS-4 would be

interested in purchasing an undisclosed number of Gabapentin pills.  CS-4 agreed to place a number of recorded calls to Wolf, Windy Boy, Louie Lockwood, and others.  CS-4 successfully made contact with Lockwood.  Lockwood advised CS-4 that Wolf's "guy" was expected to return to FBIR "in a couple of days".  CS-4 added that Windy Boy and Keyes' black male "plug" was currently working with Sam because Windy Boy and Keyes have repeatedly "shorted" the African American male pill source, who has been staying at the Windy Boy property.  As such, this unidentified African American male pill source will no longer "front" (a term commonly used when a quantity of a controlled substance is provided without the immediate expectation of payment) Windy Boy and Keyes.  However, CS-4 advised Windy Boy and Keyes could acquire pills from Sam, and then supply one or more of those pills to CS-4.

7. On March 27, 2017, this Court authorized a federal search warrant to search several residences associated with James Windy Boy, Kayla Keyes, and Windy Boy relatives in/about New Town.

8. On April 6, 2017, pursuant to the federal search warrant noted above, MHA-DDE agents and other law enforcement personnel executed said warrant on two residences associated with Windy Boy family.  Agents found several forms of controlled substances, specifically Suboxone (known by your affiant to be consumed by those who ingest/abuse opiate pills for the purpose of combatting the side effects of having a lack of pills in one's system/body) and steroids.  Agents also found and collected a number of drug paraphernalia items and electronic devices.  A later search of one or

more of those electronic devices suggested that both
Windy Boy and Keyes were engaged in the acquisition and
distribution of pills.

9. On October 2, 2017, Payton White Owl ("Payton")
was interviewed in New Town.  Payton was not in custody
and voluntarily traveled to meet with SAs Coulter and
Fauver at a prearranged location.  SA Fauver asked
Payton about Windy Boy.  Payton stated that from 2013
to 2015, when Payton was a minor, he acquired pills
from Windy Boy.  Since July of 2017, after Payton
turned the age of eighteen, Payton claimed he had
distributed pills to Windy Boy on approximately three
different occasions.  On the first occasion, Payton
supplied Windy Boy with one (1) to two (2) pills.  On
the second occasion, Payton supplied Windy Boy five (5)
to six (6) pills.  On the third occasion, Payton
supplied Windy Boy one (1) pill.

10. On January 5, 2018, SA Fauver and PA Brummett,
MHA-DDE, interviewed Patricia Lincoln ("Lincoln") in PA
Brummett's patrol vehicle outside the Gerald "Tex" Fox
Justice Center ("GTFJC") in New Town, North Dakota.
Lincoln was in custody on tribal charges of Possession
of a Controlled Substance (Oxycodone) and Possession of
Drug Paraphernalia.  SA Fauver advised Lincoln of her
rights and Lincoln acknowledged she understood her
rights and would speak with agents.  Lincoln stated
that the last time she used an oxycodone pill was
approximately four to five days prior to this
interview.  Lincoln acquired the pill from an
unidentified African American male who was staying at
the Keyes' residence, located at 314 E. Central Avenue,
New Town, (i.e., the "SUBJECT RESIDENCE").  Lincoln
stated that she has acquired oxycodone pills from this
African American male on several different occasions

and stated that at the time of this interview she believed this individual was at SUBJECT RESIDENCE. Lincoln also stated that this African American male would park rental vehicles at SUBJECT RESIDENCE when he arrived. . Lincoln also acknowledged that she acquired two (2) 30mg Oxycodone pills from this African American male on January 1, 2018, at SUBJECT RESIDENCE. Lincoln supplied this individual with $140 for the pills. On that occasion, Lincoln entered SUBJECT RESIDENCE to meet with this male and acquired the pills. Lincoln observed this African American male in possession of approximately 300-500 pills at SUBJECT RESIDENCE on either December 18, 2017 or December 19, 2017. Lincoln was subsequently charged by grand jury indictment with drug trafficking crimes related to her own distribution and conspiracy to distribute oxycodone 30mg pills with other individuals.

11. On January 9, 2018, SA White and SA Fauver, MHA-DDE, interviewed Chantz Conoway ("Conoway") in New Town, North Dakota. Conoway had contacted agents and requested to speak with them regarding his knowledge/involvement in the use and/or distribution of oxycodone pills. Conoway advised the day prior to this interview, Conoway acquired one (1) pill from Keyes. Conoway stated that Keyes traveled to his job site and provided him with the pill. Conoway acknowledged that Keyes and Windy Boy reside at the SUBJECT RESIDENCE. Conoway said he had heard from other individuals that Windy Boy and Keyes have a source of supply for pills that Conoway identified as a "black guy", who stayed at SUBJECT RESIDENCE with them for the purpose of distributing pills. Conoway has acquired oxycodone pills from Keyes on approximately two occasions and Windy Boy on approximately one occasion.

12. On February 21, 2018, SA Fauver, MHA-DDE, received a call from CS-2. CS-2 provided SA Fauver with information regarding individuals using/distributing pills in the New Town, North Dakota area. During the course of this phone conversation, CS-2 stated to SA Fauver that he/she was aware that Keyes and Wind Boy were distributors of pills.

13. On February 22, 2018, SA Fauver, MHA-DDE, interviewed Justin Price ("Price") at the MHA-DDE office in Parshall, North Dakota. Price contacted SA Fauver and voluntarily came in to speak with agents regarding his involvement in the distribution of prescription pills. Price was advised that the interview was voluntary and he did not have to make any statements and could leave the interview/office at any time. SA Fauver asked Price about his prior federal indictment for charges relating to the distribution of heroin. Price stated that his federal probation status ended on June 21, 2016. SA Fauver asked Price when, after June 21, 2016, he began abusing illegal narcotics, to include pills containing controlled substances. Price replied that on the day of his release from custody, he acquired oxycodone pills from Windy Boy, then used/ingested them. Price estimated that he last acquired oxycodone pills from Windy Boy approximately three weeks prior to this interview and that acquisition occurred at SUBJECT RESIDENCE. Price estimated that from June of 2016 up until the date of this interview (February 22, 2018), on approximately eight to ten different occasions, he had acquired pills from Windy Boy. On each of those occasions, Price acquired ten (10) to twelve (12) pills from Windy Boy. Price was subsequently charged by grand jury indictment with drug trafficking crimes related to his own

distribution and conspiracy to distribute oxycodone
30mg pills with other individuals.

14. On March 8, 2018, Alicia Standish ("Alicia")
was interviewed at the US Attorney's Office in
Bismarck, North Dakota.  During the course of the
interview, Alicia was shown several photos and asked to
identify any of the individuals she recognized in the
photos.  Alicia identified a male in a photo as that of
James Windy Boy.  She identified a female depicted in a
separate photo as that of Kayla Keyes.  Alicia reported
that she and Curt Wells ("Curt") acquired pills from
Windy Boy and Keyes on more than one occasion.  Alicia
pointed out that Curt "mostly" acquired pills from
them, versus her.  Alicia added that Keyes did not like
Alicia.  Alicia acquired pills from Windy Boy on
several occasions.  She added that Windy Boy and Keyes
may have had their own "plug" (source for pills).

15. On March 21, 2018, CS-5 was interviewed by SA
Coulter and SA Angie Cummings, MHA-DDE, in New Town,
North Dakota.  CS-5 advised over a two-week period in
January of 2018, he/she purchased two (2) or three (3)
oxycodone pills, two or three times a week, from both
Windy Boy and Keyes.  During that period of time, Windy
Boy and Keyes had an unknown pill source staying in
their home (the SUBJECT RESIDENCE).  The unknown pill
source drove a sedan with an out-of-state license plate
affixed to it.  CS-5 believed the plate may have been
issued out of the State of Michigan.  When CS-5
arranged to meet Windy Boy and Keyes at their house
(SUBJECT RESIDENCE) in New Town and purchase pills from
them, they would not allow CS-5 inside, which further
made CS-5 suspect a pill source was inside.  CS-5 added
that on one occasion, he/she "scored" three (3) or four

(4) oxycodone pills for Windy Boy and Keyes and later
supplied them those pills.

16. On March 28, 2018, Lincoln was interviewed at
the USAO in Bismarck, North Dakota.  Lincoln stated
that at one time, she was acquiring and distributing
pills from and for an African American male from
Michigan, whom she knew as "Reo".  Lincoln advised that
on multiple occasions, "Reo" had stayed at her
residence for the purpose of distributing pills.
Lincoln also stated that "Reo" then began to stay at
the SUBJECT RESIDENCE for the purpose of distributing
prescription pills.  Lincoln stated that she acquired
pills from Windy Boy and Keyes when she needed pills
and that several individuals had also told her that
"Reo" was staying at the SUBJECT RESIDENCE.  Lincoln
stated that the pills she acquired from Windy Boy and
Keyes were the same type of pills that she had acquired
from "Reo" when he had stayed at her residence.
Lincoln identified the pills as "big horse pills" that
had the number 214 stamped on them with a line.  On one
occasion, "Reo" also contacted Lincoln and invited her
to come over to the SUBJECT RESIDENCE.  "Reo" told
Lincoln that he was "back in town" and that if she
wanted "some" (pills) he could provide them to her.
During the course of this interview, Lincoln was also
asked to identify individuals she had recently acquired
pills from.  Lincoln identified Windy Boy as an
individual she had recently acquired pills from.

17. On May 24, 2018, PA Nate Miller, MHA-DDE,
observed a white Hyundai utility vehicle bearing
Illinois registration V551863 pull into the driveway of
SUBJECT RESIDENCE.  The vehicle remained at SUBJECT
RESIDENCE for a brief period of time before departing
and ultimately traveling east on Highway 23 from New

Town.  A registration check was done on the vehicle and
the vehicle was registered to Ean Holdings LLC., which
MHA-DDE agents are aware is a subsidiary company of
Enterprise rental company.  Based on MHA-DDE agents'
past experiences, they are aware that individuals from
various states, to include Michigan, have trafficked
pills and currency to/from the Fort Berthold Indian
Reservation ("FBIR") in multiple rental vehicles
registered to Ean Holdings, LLC.  Regardless, PA
Brummett, MHA-DDE, initiated a traffic stop on the
vehicle for failure to display a front license plate.
The occupants of the vehicle were identified as Alexis
Roberts ("Roberts"), Denzell Turner ("Turner"),
Tasheionya Frye ("Frye"), and Lonnie Linscomb Jr.
("Linscomb").  All occupants provided various and
different accounts of their travel plans and where they
were traveling from.  Both Turner and Linscomb stated
that they were from the state of Michigan.  PA Britney
Larvie, MHA-DDE, who arrived on-scene to assist PA
Brummett, deployed her narcotic detection K9 on the
vehicle and received a positive indication by the K9 to
the odor of illegal narcotics coming from/about the
vehicle.  All occupants were then removed from the
vehicle and a search of the vehicle was conducted.
Inside of the vehicle agents located a plastic Coca-
Cola bottle containing a pink-colored liquid that
presumptively tested positive for opiates.  All four
occupants denied ownership or knowledge of the Coca-
Cola bottle and were placed under arrest for Possession
of a Controlled Substance (Schedule I, II, or III) and
transported to the Mountrail County Correctional Center
("MCCC").  Prior to being transported to MCCC, Frye
provided PA Brummett written consent to a search of her
cell phone.  In the cell phone, PA Brummett located
several text messages between Frye and other

individuals negotiating price and amounts related to
the distribution of marijuana.  PA Brummett also
located several messages between Frye and another
individual where Frye negotiated the price and sale of
three (3) 30mg "Perks".  Frye and this other individual
appear to agree to a price of $30 a pill.  Based on
MHA-DDE agents' training and experience with
investigations into the distribution of prescription
pills, they are aware that "Perks" is a term commonly
used when referring to Percocet pills, which are known
to contain Oxycodone.

18. On June 12, 2018, MHA-DDE personnel, including
SA White, conducted surveillance of SUBJECT RESIDENCE.
She observed a silver Chrysler 300 sedan, bearing North
Dakota license plate number 226 CGN, at the SUBJECT
RESIDENCE at approximately 6:58 p.m.   She then
witnessed an African American male exit the front
passenger side of the vehicle and enter the SUBJECT
RESIDENCE.  After the unidentified African American
male went inside the residence, the silver Chrysler 300
left the SUBJECT RESIDENCE and traveled to a residence
on Dakota Drive in the New Town area.  SA White
continued surveillance of the silver Chrysler 300 on
Dakota Drive.  SA White identified the residence the
Chrysler 300 parked at as being the residence of
Freedom Mann-Cross ("Freedom").  Freedom has been
identified during multiple interviews conducted by MHA-
DDE agents as a user and distributor of pills.  SA
White observed two females walk up to the silver
Chrysler 300.  One female got into the front passenger-
side of the vehicle and the other female went to the
front driver-side window of the vehicle.  The female at
the front driver-side window then walked away and
entered the residence.  The unidentified African
American emerged from the driver-side door of the

vehicle, walked to the rear of the vehicle, and opened
its trunk lid.  That individual retrieved a small black
bag from the trunk of the vehicle and returned to the
driver seat of the vehicle.  Shortly after, a tan
Chevrolet Suburban, bearing North Dakota license plate
850 CCX arrived at the residence and parked directly
behind the silver Chrysler 300.  The driver of the tan
Suburban was identified by SA White as Thomas Grant
("Grant").  SA White has known for some time that
Grant's mother was a suspected abuser of pills and that
Grant has been previously convicted for a drug-related
charge.  SA White was unable to identify the front
passenger in the Suburban.  SA White observed the
unidentified African American male exit the driver side
of the silver Chrysler 300 and walk to the front
passenger side of the tan Suburban.  SA White then
observed an apparent hand-to-hand exchange between
Grant, the driver of the tan Suburban and the
unidentified African American male.  SA White noted
that she observed Grant reach across the front
passenger seat of the Suburban to consummate the
transaction.  The unidentified African American male
walked back to the silver Chrysler 300 and got into the
vehicle.  The tan Suburban then left the residence.
Shortly after, the silver Chrysler 300 departed the
residence and traveled to a residence on 6th Street in
New Town.  SA White continued surveillance of the
Chrysler 300 and after it had arrived at the residence
on 6th Street, she identified that residence as having
been occupied by Megan Hale.  After only several
minutes at the residence, the silver Chrysler 300
departed the Hale residence and traveled east on 6th
Street.

      19. On June 12, 2018, SA White received information
from CS-4.  CS-4 advised the silver Chrysler 300

returned to the SUBJECT RESIDENCE and then left again when Windy Boy's mother, Blanca Windy Boy ("Blanca"), arrived at the residence.   CS-4 observed Windy Boy place a small black bag in the trunk of Blanca's vehicle, which was described as a dark grey Dodge Charger.   Blanca then departed the SUBJECT RESIDENCE. The silver Chrysler 300 later returned to the SUBJECT RESIDENCE.   Windy Boy was then observed walking west on 7th Street, towards the Circle of Life building, multiple times.   Windy Boy was observed also walking towards 9th Street and back to SUBJECT RESIDENCE.

20.   Based upon my training, education, and experience in conducting narcotics investigations, I am aware that persons who traffic in controlled substances generally keep records, notes, receipts, ledgers, logs of buyers and sellers, transaction amounts, and other similar documentation of their drug trafficking activity.   They also utilize cellular phones to engage in drug trafficking, including through text messaging and calls, and maintaining contact lists for buyers and sellers of controlled substances.   Drug traffickers also frequently possess various drug paraphernalia to assist in their drug trafficking activities, such as scales to weigh out quantities of controlled substances or smoking devices and hypodermic needles and syringes to ingest controlled substances.

21. Based on my training and experience, consultation with other law enforcement officers experienced in investigations regarding narcotics trafficking and the forensic examination of computers, computer tablets, cellular telephones and digital media, I have learned the following:

    a.   A thorough search of computers, computer tablets, cellular phones and digital media for

evidence of instrumentalities of crime commonly requires a qualified expert to conduct the search in a laboratory or another controlled environment.

b.   Searching computers, computer tablets, cellular phones and digital media is a highly technical process which requires specific expertise and specialized equipment.  There are so many types of digital media in use today that it is impossible to bring to the search site all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search.  In addition, it may also be necessary to consult with personnel who have specific expertise in the type of computer, computer tablet, cellular phone and digital media that is being searched.

c.   Searching computers, computer tablets, cellular phones and digital media requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted, or password-protected data.  Since such data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential in conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted.

Therefore, in searching for evidence, fruits, and instrumentalities of criminal activity within cellular telephones or other digital or electronic media, those items will need to be transported to an appropriate law enforcement laboratory for review to determine whether the contents thereof contain evidence and instrumentalities of violations of federal law.  These

items and the contents thereof will be reviewed by
appropriately trained personnel in order to extract and
seize any data that relates to the fruits,
instrumentalities, and evidence in violation of Title
21, United States Code, Sections 841 and 846.

22. As part of this request, I am requesting
authorization to seize any computers, computer tablets
such as iPads, cellular phones, including any and all
media storage devices, currently inside the premises
Keyes/Windy Boy residence, located at 314 E. Central
Avenue, New Town, North Dakota, and to search these
computers, computer tablets, cellular phones and media
storage devices for all records, data, and images, in
whatever form and by whatever means they have been
created or stored on such cellular telephones and
storage devices relating to violations of 21 USC §
841(a) (drug trafficking) and/or 21 USC § 846
(conspiracy to traffic drugs) involving James Windy
Boy, Kayla Keyes, and any unknown or yet to be
identified subjects, including but not limited to lists
of drug customers and related identifying information;
types, amounts and prices of drugs purchased, used or
trafficked, or offered for purchase or sale, as well as
dates, places, and amounts of specific transactions;
any information related to sources of narcotic drugs
(including names, addresses, phone numbers, images, or
any other identifying information); photographic or
video images of drugs, drug paraphernalia, money or
monetary instruments, drug use or drug transactions;
any information recording the travels of James Windy
Boy, Kayla Keyes, and any unknown or yet to be
identified subjects; and any financial account and
transaction information.

23. Based on the above facts and circumstances, I believe there is sufficient probable cause to search the premises located at 314 E. Central Avenue, New Town, North Dakota for the items identified in Exhibit B.

The foregoing is true to the best of my knowledge and belief.

_____

DEREK DAVIS

SPECIAL AGENT

HOMELAND SECURITY INVESTIGATIONS

Sworn and subscribed before me via telephone pursuant to Rules 41(d)(3) and 4.1, F.R.Crim.P., this _____ day of June, 2018.

_____

Charles S. Miller, Jr.

United States Magistrate Judge